**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| EDWARD LEINBACH, KATHLEEN L. LEINBACH, and THE KATHLEEN L. LEINBACH TRUST date February 13, 2006, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 24-CV-0549-CVE-MTS |
| AMERICAN INTERNATIONAL GROUP, INC. d/b/a AIG PROPERTY CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | |

**OPINION AND ORDER**

Now before the Court are defendant's motion for partial summary judgment (Dkt. # 44), plaintiffs' motion in limine to exclude the testimony of Timothy France (Dkt. # 61), and defendant's motion in limine (Dkt. # 63). Plaintiffs filed this case alleging claims of breach of insurance contract and breach of the covenant of good faith and fair dealing (bad faith) against defendant American International Group, Inc. d/b/a AIG Property Casualty Company (AIG). Dkt. # 2-2. AIG argues that there is a legitimate coverage dispute between the parties, specifically as to plaintiffs' demand for a total roof replacement, and that plaintiffs cannot prevail on a claim for bad faith claims handling against AIG. Dkt. # 44. Plaintiffs respond that there is no dispute that AIG has substantially underpaid plaintiffs' insurance claim, and that AIG acted in bad faith by relying on an obviously flawed report by its retained engineer who inspected plaintiffs' property. Dkt. # 52, at 17-23.

Plaintiffs and defendants have  filed motions in limine asking the Court to exclude certain evidence at trial.[1]  Dkt. ## 61, 63.

**I.**

Plaintiffs Edward and Kathleen Leinbach purchased a homeowner's insurance policy from AIG for their home located at 2104 South Madison Avenue in Tulsa, Oklahoma, and the policy was in effect from August 15, 2022 to August 15, 2023.  Dkt. # 44-1.  On June 18, 2023, a severe storm with strong winds caused damage to plaintiffs' home, and AIG agreed that wind was a covered cause of loss under the policy.  Dkt. # 44-3, at 15.  In particular, two trees fell on the north side of the home causing damage to an ornamental iron fence and a brick wall. Dkt. # 44-2, at 2.  On June 26, 2023, Shannon Epperson of HUB International reported the loss to AIG, and AIG assigned the claim to Diane Gasior.  Dkt. # 44-3, at 19-20.  Gasior assigned an independent adjustor, Alacrity Solutions Group, LLC (Alacrity), to investigate plaintiffs' insurance claim and prepare an estimate, and Rusty Abrams of Alacrity was responsible for conducting the initial inspection of plaintiffs' property.  Id. at 17-18.  Before the initial inspection took place, Gasior spoke to Epperson to verify the loss date and the scope of the damage caused by falling trees, and Epperson advised Gasior that repairs to plaintiffs' property were underway.  Id. at 17.

Abrams conducted his initial inspection on June 29, 2023, and verified plaintiffs' report of fallen trees on the north side of the home.  Dkt. # 44-4, at 2.  He also noted that the "insured's chosen roofer found one ridge tile missing on the NW rear of the house, but found no additional damage"

---

[1]     The parties have also filed a joint motion in limine (Dkt. # 62) asking the Court to exclude evidence at trial.  The Court has reviewed the joint motion in limine and finds the parties' stipulations are reasonable.  However, the Court finds no reason to rule on a motion that memorializes the parties' agreement on standard evidentiary matters, and the Court finds that the joint motion in limine (Dkt. # 62) is moot.

to the roof.  Id.  Abrams recommended that AIG issue payment in the amount of $21,310.18 for tree removal, damage to fencing, and replacement of the missing roof tile.  Id. at 2-3.  At this point in the claims handling process, Abrams did not find that plaintiffs were focused on potential damage to the roof, and Abrams conducted only a ground level inspection for potential damage to the roof.  Dkt. # 52-1, at 15.  On August 24, 2023, Abrams sent a second report to AIG after receiving an update from plaintiffs' roofing company, C&S Roofing (C&S), that C&S believed plaintiffs' roof had suffered substantial hail damage, which included chipped and damaged tiles.  Dkt. # 44-5, at 3.  C&S also noted wind damage which caused tiles to move or shift, but C&S stated that it would not replace the damaged tiles due to the potential for causing additional damage to the roof.  Id. at 1.  Abrams spoke  to the insureds and advised them that the hail damage to the roof was probably not caused by the June 18, 2023 storm, as there was no significant hail near plaintiff's home during the storm.  Id.

Gasior reviewed Abram's update on plaintiffs' claim and determined that a roof inspection by an engineer should be performed to determine the cause of damage to plaintiffs' roof, and AIG retained Rimkus Consulting Group, Inc. (Rimkus) to inspect plaintiffs' roof.  Dkt. # 44-6.  Timothy France, P.E., was assigned to conduct the inspection, as he previously inspected plaintiffs' roof as part the evaluation of a prior hail damage claim in 2017.[2]  Dkt. # 44-7, at 2.  On September 7, 2023, AIG sent plaintiffs a reservation of rights letter stating that exclusions in the homeowner's insurance policy may limit or exclude coverage for wind and hail damage to the roof.  Dkt. # 52-3, at 3.  France conducted an inspection of plaintiffs' roof on October 6, 2023, and Abrams, Edward Leinbach, and

---

[2]     Plaintiffs' prior claim was filed in 2017, but France's investigation concerning that claim did not take place until 2018.  To maintain consistency with the parties' arguments and evidentiary materials, the Court will refer to the prior investigation as France's 2018 investigation.

Shawn Uzzel of C&S were present for the inspection.  Dkt. # 44-13.  Following the inspection,

Abrams recommended that AIG increase the reserves for the dwelling to $200,000 and to $35,000

for other permanent structures on the property based on the "verbal statement of findings" made by

France during the inspection.  Dkt. # 52, at 2.  The recommendation of $200,000 for the dwelling

specifically related to the roof, and the amount represented the cost of replacing "antique Ludowici

tile roofing."  Id.

On October 26, 2023, France provided his final report on damage to plaintiffs' roof, and he

made the following findings:

> 1.      The tile roof covering of the residence was not damaged by hail impacts.
>
>    a.      The areas of spalled tiles were indicative of freeze-thaw effects on the tiles, which occur as the moisture absorbed within the tiles expends.
>
> 2.      The tile roof covering of the residence was damaged by wind forces.  The wind damage to the tiled roof consisted of the displacement of only one hip tile at the northwest corner of the garage, while the remainder of the roof was not damaged by wind forces.
>
>    a.      The gaps between the tiles were the result of installation and/or movement due to self-weight (gravity) that had occurred over time and not from the effects of wind forces.

Dkt. # 44-14, at 4.  Abrams contacted Gasior to advise her that France's report was not consistent

with his verbal findings on the day of the inspection, and Gasior also received calls from the insured

and C&S making similar complaints about France's written report.  Dkt. # 44-3, at 8.  Abrams spoke

to France to clarify the basis for his findings, and France stated that he had compared the current

condition of the roof to photographs from his 2018 inspection.  Dkt. # 44-16, at 1.  Abrams conveyed

France's explanation concerning the change in his findings to Edward Leinbach, who indicated that

he would hire his own engineer.  Id.  Plaintiffs retained 360 Engineering Group of Tulsa (360

Engineering) and had the roof inspected, and Edward Leinbach informed Abrams that the inspection by 360 Engineering resulted in a "completely different finding than Rimkus did." Id. at 2. Edward Leinbach had spoken to Ludowici roofing experts who recommended total replacement of the roof tiles. Id. AIG delayed issuing a decision on plaintiffs' insurance claim and asked plaintiffs to send AIG a copy of the 360 Engineering report but, after 90 days, plaintiffs had not provided a copy of the 360 Engineering report to AIG. Dkt. # 44-18; Dkt. # 44-19; Dkt. # 44-20.

On March 19, 2024, Gasior sent plaintiffs a letter explaining that AIG would pay $21,310.18 to settle plaintiffs' insurance claim, but AIG was relying on France's report to deny plaintiffs' request for total roof replacement. Dkt. # 44-21. 360 Engineering completed its report in April 2024 and found that the clay tile roofing had suffered damage in the form of loose nails, cracked and chipped tiles, gaps at the tile joints, and hail damage, and it opined that "storm and high wind forces have caused damage to a portion of the roof that exceeds the single hip tile noted in the Rimkus report and the items noted above are required to be repaired and replaced as required. The items noted were observed at various locations across the roof [and are] estimated to have impacted 15% of the roof." Dkt. # 44-23, at 1-2. Gasior sent a copy of 360 Engineering's report to France, but he found nothing in the report that caused him to change his opinions about the cause of any damage to plaintiffs' roof. Dkt. # 44-3, at 3. France maintained his opinion that "normal wear and tear/gradual deterioration" caused displacement of the roof tiles, and he disagreed with 360 Engineering's conclusion that any chips in the tiles were of recent origin. Id. On May 2, 2024, Shannon Epperson notified Gasior that the Leinbachs had noticed a ceiling stain caused by water leaking through the roof, and Edward Leinbach wanted AIG to pay for a contractor to fix the leak. Dkt. # 44-24, at 2. AIG declined Edward Leinbach's request and advised the insured to have the leak

repaired by a contractor of their choice.  Dkt. # 44-25.  On May 21, 2024, AIG sent plaintiffs a second letter affirming the initial denial of their claim following France's review of 360 Engineering's report.  Dkt. # 44-26.

On June 5, 2024, plaintiffs filed this case in Tulsa County District Court alleging claims of breach of insurance contract, bad faith breach of insurance contract against AIG, and violation of Oklahoma's Unfair Claims Settlement Act (UCSA).  Dkt. # 2-2.  AIG removed the case to this Court and filed a motion to dismiss plaintiffs' claim under the UCSA.  Dkt. ## 2, 12.  Plaintiffs stipulated to the dismissal of their UCSA claim and the Court dismissed plaintiffs' UCSA claim.  Dkt. # 19.  After the case was filed, AIG retained Jennifer Sheppard to offer expert opinions and testimony concerning the cause of damage to plaintiffs' roof, and she found that the damage to roof from the loss event was potentially more serious than the one missing tile attributed to the storm by France and AIG.  Dkt. # 52-8, at 23-29, 42.  However, Sheppard faulted 360 Engineering's inspection methodology and found that 360 Engineering overestimated the amount of damage to the roof caused by wind.  Id. at 42-44.  Sheppard concluded that a total of six roof tiles had been displaced or damaged as a result of the June 18, 2023 storm.  Id. at 3.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

**III.**

AIG argues that there is a legitimate dispute between the parties concerning the amount of the plaintiffs' loss, and AIG's reliance on France's opinions concerning the extent and cause of any damage to the plaintiffs' roof was reasonable. Dkt. # 44, at 15-21. Plaintiffs respond that it has obtained an estimate of $660,000 to make necessary repairs to their roof caused by wind damage from the June 18, 2023 storm, and AIG's offer to pay approximately $21,000 to resolve plaintiffs' insurance claim shows that AIG has not handled plaintiffs' insurance claim in good faith. Dkt. # 52,

at 17-18.  Plaintiffs also contend that AIG has acted unreasonably by relying on France's obviously flawed findings as a basis to deny plaintiffs' demand for total roof replacement, because his investigation was inadequate and his written findings contradict his initial verbal assessment to Edward Leinbach that roof needed total replacement due to wind damage.  Id. at 20-22.

The Oklahoma Supreme Court has held that "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought."  Christian v. Am. Home. Assurance Co., 577 P.2d 899, 904 (Okla. 1977).  "The core of a bad-faith claim 'is the insurer's unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy.'"  Flores v. Monumental Life Ins. Co., 620 F.3d 1248, 1255 (10th Cir. 2010) (quoting McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981)).  To succeed on a bad faith claim, a plaintiff "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of [plaintiff's] claim."  Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993); accord Shotts v. GEICO Gen. Ins. Co., 943 F.3d 1304, 1314 (10th Cir. 2019).  According to the Tenth Circuit, courts generally use a two-step analysis to determine whether a plaintiff has made a sufficient showing of bad faith.  Shotts, 943 F.3d at 1314-15.  The Court considers "whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim" and, "if the court determines there is a legitimate dispute between the parties, . . . whether the plaintiff offered specific additional evidence to demonstrate bad faith."  Id. at 1315.  "The additional evidence required for this showing" may include evidence that 1) "the insurer did not *actually* rely on th[e] legitimate [dispute] to deny coverage"; 2) the insurer "denied the claim for an illegitimate reason"; 3) the insurer "otherwise

failed to treat the insured fairly"; and 4) "the insured performed an inadequate investigation of the claim." Id. (internal quotations and citations omitted) (emphasis and alterations in Shotts, 943 F.3d at 1315).

The Court will initially consider whether AIG partially denied plaintiffs' insurance claim based on a legitimate coverage dispute. AIG does not dispute that plaintiff suffered a covered loss from the June 18, 2023 storm, but AIG disputes plaintiffs' assertion that the storm damaged the clay tiles on the roof of plaintiffs' home to the extent that total roof replacement is warranted. The summary judgment record contains evidence showing that there are a range of opinions on the extent of damage to the roof and the cause of the damage. France concluded that the storm displaced a single clay roof tile, and any other loose or misplaced tiles were the result of improper installation and gravity. Dkt. # 44-14, at 4, 10-11. The engineering firm hired by plaintiffs, 360 Engineering, found that storm damage impacted 15% of the roof, and 360 Engineering also identified hail damage from prior storms as the cause of some of the damage to the roof tiles. Dkt. # 44-23, at 1-2. AIG's expert retained for the purpose of this litigation, Sheppard, found that a total of 6 roof tiles were displaced by the storm, but she rejected 360 Engineering's conclusion that the storm caused more substantial damage to the roof. Dkt. # 52-8, at 2-3. Plaintiffs argue that AIG cannot assert that a legitimate coverage dispute exists, because AIG failed to perform an adequate investigation to support its decision to partially deny plaintiffs' insurance claim. Dkt. # 52, at 24. The Court has reviewed plaintiffs' arguments and finds that the issues raised by plaintiff go to the additional bad faith factors, rather than the existence of a legitimate coverage dispute. The Court agrees with plaintiffs that the existence of a coverage dispute is not an "impenetrable shield" against a claim of bad faith claims handling, but challenges to the insurer's inspection findings and the adequacy of its

investigation should be considered at the second step of the bad faith analysis. Dkt. # 52, at 24 (citing Timberlake Constr. Co. v. U.S. Fidelity & Guar. Co., 71 F.3d 335, 343 (10th Cir. 1995)). AIG has identified a legitimate coverage dispute and the evidence establishes that AIG relied on this coverage dispute as the basis for partially denying plaintiffs' claim. See Bannister v. State Farm Mut. Auto. Ins. Co., 692 F.3d 1117 (10th Cir. 2012) (explaining that an insurer must identify a legitimate coverage dispute and must actually rely on the dispute as the basis for denying coverage to avoid liability for bad faith).

The Court will proceed to the second step of the analysis and will consider whether any additional factors support plaintiffs' assertion that AIG acted in bad faith by failing to pay for a total replacement of plaintiffs' roof. Plaintiffs contend that AIG failed to conduct an adequate investigation in support of its decision, and it failed to identify and consider all material facts in rejecting plaintiffs' demand for total roof replacement. Dkt. # 52, at 20. In particular, plaintiffs argue that AIG could not have relied on France's findings in good faith, because he failed to use proper methodology and his written findings contradict his verbal findings made during his inspection. Id. at 20-21. AIG argues that it conducted a thorough investigation of plaintiffs' insurance claim, and its decision to partially deny plaintiffs' claim was based on a reasonable interpretation of the available evidence. Dkt. # 44, at 19.

Plaintiffs argue that AIG conducted an inadequate investigation by failing to initially inspect the roof upon receiving notice of plaintiffs' claim, and AIG retained an inspector to examine the roof only after plaintiffs made a specific inquiry about possible roof damage. Dkt. # 52, at 20. AIG received notice of plaintiffs' claim on June 26, 2023 and Abrams promptly conducted an investigation, and the evidence shows that plaintiffs were initially concerned about damage caused

by falling trees, rather than wind or hail damage to the roof. Dkt. # 44-3, at 19-20. The Court can find no mention of roof damage in plaintiffs' initial notice of claim to AIG. Id. The first mention of possible roof damage in plaintiffs' claim file occurs on August 2, 2023, when Abrams notified Gasior that the insured had contacted a roofer who allegedly found hail damage to the roof of plaintiffs' home. Id. at 14. The letter from C&S relies primarily on hail as the cause of damage to plaintiffs' roof, even though there was no hail at plaintiffs' location during the June 18, 2023 storm. Dkt. # 44-5, at 3. C&S mentioned wind as a secondary cause of moving or shifting roof tiles, but C&S declined to respond to Abrams' request for more information about its findings. Dkt. # 44-3, at 13. AIG contacted Rimkus to investigate the condition of plaintiffs' roof and the cause of any damage approximately one month after first receiving notice of possible damage to plaintiffs' roof from the storm. Id. at 12. The evidence does not show that the scope of AIG's investigation was inadequate or that AIG delayed in investigating damage to plaintiffs' roof. Plaintiffs did not initially disclose roof damage as part of their insurance claim and, when they did inform Abrams about potential roof damage, he immediately investigated the matter and tried to contact C&S for more information. C&S's failure to respond to Abrams delayed AIG's investigation into plaintiffs' notice of potential roof damage, but AIG set up a roof inspection by an engineer within approximately one month of learning of this aspect of plaintiffs' claim. AIG's initial decision not to investigate roof damage upon receiving notice of plaintiffs' claim does not tend to show that AIG engaged in bad faith claims handling.

Plaintiffs' primary argument in support of their bad faith claim is that AIG had no reasonable basis to rely on France's findings to support its decision to deny plaintiffs' demand for total roof replacement. Plaintiffs argue that France's findings of improper installation in his 2023 report

conflicted with findings in 2018 that no installation defects existed. Dkt. # 52, at 20.  Edward

Leinbach alleges that France made verbal statements that the roof had suffered significant wind

damage, but France's report following the 2023 inspection directly contradicted his verbal findings.

Dkt. # 52-12, at 7-8, 12, 15-17.  Plaintiffs fault AIG's adjustor, Gasior, for accepting France's

written findings without any further investigation, and plaintiffs contend that AIG knew that

acknowledging the obvious faults in France's 2023 report would have required total replacement of

plaintiffs' roof. Dkt. # 52, at 21-22.  France's methodology during the preparation of the 2023 report

has also been challenged by plaintiffs, as he did not personally walk around on the roof and he relied

heavily on photographs taken by Abrams to support his findings.  Id. at 23; Dkt. # 42-2, at 6-9.

The Court does not find that AIG's reliance on France's opinion tends to suggest that AIG

conducted an inadequate review of plaintiff's insurance claim or that AIG lacked a reliable basis for

partially denying the claim.  The Court notes that plaintiffs own evidence fails to wholly support its

claim that total roof replacement is necessary, as the engineering firm retained by plaintiffs found

that only 15 percent of the roof was damaged by wind and hail.  Plaintiffs may be able to show that

replacement of the damaged roof tiles would cause additional damage to the roof and total

replacement is the only viable method of repair, but this finding is not compelled by the evidence

and plaintiffs must make this argument to the jury. The Court notes that none of the experts who

have examined plaintiffs' roof has come to any kind of consensus about the cause or scope of

damage to plaintiffs' roof, and this strongly supports a finding that there is a legitimate coverage

dispute.  As to plaintiffs' complaints about France's allegedly inadequate investigation, plaintiffs

have not shown that having France visually inspect the roof by walking around on it would have

enhanced his findings or led to the discovery of additional evidence supporting plaintiffs' demand

for a roof replacement, and his decision to rely on photographic evidence is a basis for cross-examination rather than wholesale rejection of his opinions.  Plaintiffs' plainly disagree with AIG's conclusion that total roof replacement was not covered by their homeowner's insurance policy in this instance, but they have not produced any evidence showing that AIG lacked a good faith basis for partially denying plaintiffs' insurance claim.  Therefore, the Court concludes that AIG is entitled to summary judgment on plaintiffs' bad faith claim.

**IV.**

Plaintiffs have filed a motion in limine (Dkt. # 61) asking the Court to limit France's testimony to the findings disclosed in his two written reports, and they ask the Court to prohibit France from offering expert opinions during his trial testimony.  Defendant has filed a motion in limine asking the Court to exclude several categories of evidence, including evidence related to plaintiffs' damages as to its bad faith claim.  Dkt. # 63.

"The purpose of a motion in limine is to aid the trial process by enabling the Court 'to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitively set for trial, without lengthy argument at, or interruption of, the trial.'" Mendelsohn v. Sprint/United Management Co., 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008).  However, a court is almost always better situated to make evidentiary rulings during trial, and a court may defer an in limine ruling unless the party seeking to exclude evidence shows that the evidence is inadmissible on all potential grounds. Wright v. BNSF Railway Co., 2016 WL 1611595, *1 (N.D. Okla. Apr. 22, 2016).  Plaintiff filed this case in federal court based on diversity jurisdiction, and the admissibility of evidence is generally governed by federal law.  Blanke v. Alexander, 152 F.3d 1224, 1231 (10th Cir. 1998).  State law concerning the admissibility of evidence will be considered only if the issue involves a

13

"substantive" state rule of evidence, such as the collateral source rule or the parol evidence rule. Id.

The parties are advised that all ruling on the motions in limine are preliminary.

**Plaintiffs' Motion in Limine (Dkt. # 61)**

Plaintiffs ask the Court to limit France's testimony to his observations and findings based on his 2018 and 2023 inspections of plaintiffs' roof, and they ask the Court to prohibit France from testifying about any additional information he may have learned about plaintiffs' claim as a result of this litigation. Dkt. # 61, at 4. Defendant argues that it is unreasonable to limit France's testimony solely to the opinions included in his inspection reports, but it appears that defendant may have read plaintiffs' argument more narrowly than intended by plaintiffs. Plaintiffs plainly state that they are not seeking to exclude all testimony outside of France's report and they clarify that:

> Plaintiffs are not seeking to exclude the testimony of France in its entirety, rather seeking to limit to his knowledge and perception at the time of the handling of Plaintiffs' claim uninfluenced by knowledge he may have gleaned during the course of this action.

Id. The parties are in agreement that France will be testifying as a fact witness, and the Court does not construe plaintiffs' argument as defendant suggests that France may only testify about statements or opinions actually contained in his inspection reports. Instead, plaintiffs ask the Court to exclude any opinion testimony by France based on information he learned as a result of this litigation, and the Court finds that this request is reasonable. The parties should limit their examination of France to his pre-litigation inspections of plaintiffs' roof, and plaintiffs are cautioned that examining France about post-litigation matters could open the door to additional opinion testimony by France.

**Defendants' Motion in Limine (Dkt. # 63)**

Defendants ask the Court to exclude five categories of evidence. Defendants ask the Court to prohibit plaintiffs from making a golden rule argument and from arguing that an insurance company is required to give the insured the "benefit of the doubt." Dkt. # 63, at 2-4. Defendant argues that plaintiffs should be prevented from offering a specific formula for the jury to calculate bad faith damages, and they ask that plaintiffs be prohibited from discussing litigation-related stress during their testimony. Id. at 5-8. Finally, defendant argues that plaintiffs have not disclosed an expert witness within the deadline established by the Court and plaintiffs should not be permitted to call an expert witness at trial. The Court finds that defendant's request concerning bad faith damages is moot based on the Court's summary judgment in favor of defendant on this claim. Plaintiffs also state that they do not intend to call an expert witness at trial or argue that AIG was required to give them the "benefit of the doubt," and these issues are also moot.

Plaintiffs agree that they will not make a golden rule argument as to damages, but they argue that Tenth Circuit precedent permits either side to ask the jury to use common sense to consider whether a party's actions were reasonable. Dkt. # 66, at 3-4. Defendant agrees that plaintiffs are permitted to argue that jurors can consider the reasonableness of defendant's conduct from their own perspective, as long as plaintiffs' counsel does not make an argument solely to evoke an emotional response from the jurors. Dkt. # 67, at 2. The Court finds that plaintiff may make a golden rule argument, if appropriate, going to the issue of liability. However, in light of the Court's ruling on plaintiffs' bad faith claim, the issue of claims handling will be much less significant at trial and the parties' arguments should be focused on the appropriate amount that defendant should have paid to resolve plaintiffs' insurance claim.

Plaintiffs agree that they will not offer evidence of litigation-based stress, but they do intend to argue and offer evidence that defendant's delay in resolving plaintiffs' insurance claim had a negative effect on their lives. Dkt. # 66, at 9. The Court finds that this type of evidence will not be relevant to plaintiffs' breach of contract claim, and plaintiffs should be prohibited from testifying about personal stress or anxiety related to claims handling matters. The jury will undoubtedly infer that plaintiffs were dissatisfied and unhappy with defendant's handling of plaintiffs' insurance claim, but this issue is not directly relevant to the appropriate amount that should have been paid by defendant to fully pay plaintiffs' insurance claim. Plaintiffs' counsel shall not solicit testimony concerning plaintiffs' emotional response to defendant's claims handling but, of course, plaintiffs are free to express their disagreement with defendant's decision to make partial payment of the amount demanded by plaintiffs on their insurance claim.

**IT IS THEREFORE ORDERED** that defendant's motion for partial summary judgment (Dkt. # 44) is **granted**, and summary judgment is entered in favor of defendant on plaintiffs' bad faith claim.

**IT IS FURTHER ORDERED** that plaintiffs' motion in limine related to opinion Testimony of Timothy France (Dkt. # 61) is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion in limine (Dkt. # 63) is **granted in part** and **moot in part**, as provided in section IV of this Opinion and Order.

**IT IS FURTHER ORDERED** that the joint motion in limine (Dkt. # 62) is **moot**.

**DATED** this 23rd day of June, 2026.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE